1  Douglas A. Plazak, State Bar No. 181709
   dplazak@rhlaw.com
2  REID & HELLYER APC
   3685 Main Street, Suite 300
3  Riverside, California 92501
   Telephone: (951) 682-1771
4  Facsimile: (951) 686-2415

5  Attorneys for
   Debtor and Debtor-in-Possession

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                  **RIVERSIDE DIVISION**

11  In re Indian Canyon & 18th Property Owners | Case No. 6:22-bk-13378-SY

12          Debtor and Debtor-in-              | SubChapter V Chapter 11
            Possession.
13                                             | **DEBTOR'S MOTION FOR ENTRY
                                               | OF AN ORDER CONFIRMING
14                                             | DEBTOR'S PLAN OF
                                               | REORGANIZTION UNDER
15                                             | CHAPTER 11; MEMORANDUM OF
                                               | POINTS AND AUTHORITIES; AND
                                               | DECLARATIONS IN SUPPORT**
16
17                                             | Date:     May 16, 2023
                                               | Time:     9:30 a.m.
18  _____           | Crtrm:    #302, Third Floor
                                               |           3420 Twelfth Street
19                                             |           Riverside, CA 92501

20

21  **TO THE HONORABLE SCOTT H. YUN, UNITED STATES BANKRUPTCY TRUSTEE,**

22  **THE U.S. TRUSTEE, ARTURO CISNEROS, THE SUBCHAPTER V CHAPTER 11**

23  **TRUSTEE, AND ALL PARTIES IN INTEREST:**

24  ////

25  ////

26  ////

27  ////

28  ////

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT. ....................................................................................... 1

II.     CONFIRMATION CRITERIA HAS BEEN MET ......................................................... 2

III.    OVERVIEW OF CLASSIFICATION OF CLAIMS ...................................................... 2

    A.      Classes of Priority Unsecured Claim ................................................................... 2

    B.      Class[es]of General Unsecured Claims ................................................................ 2

        1      Treatment of Unclassified Claims ............................................................ 3

        2      Priority Tax Claims ................................................................................. 5

IV.     COMPLIANCE WITH 11 U.S.C. Section 1191, 1129(a) ............................................ 6

    A.      Bankruptcy Code section 1129(a)(1) - Plan Compliance ..................................... 6

        1.      Bankruptcy Code section 1122 ................................................................ 6

        2.      Bankruptcy Code section 1123 ................................................................ 7

        3.      Bankruptcy Code Section 1190 ............................................................... 9

    B.      Bankruptcy Code Section 1129(a)(2) .................................................................. 9

    C.      Bankruptcy Code Section 1129(a)(3)-Plan Proposed in Good Faith .................. 10

    D.       Bankruptcy Code Section 1129(a)(4)-Disclosure of Payments.......................... 11

    E.      Bankruptcy Code Section 1129(a)(5)-Identification of Officers, Directors, Trustee ................................................................................................................. 11

    F.      Bankruptcy Code Section 1129(a)(6)-Regulatory Approval............................... 11

    G.      Bankruptcy Code Section 1129(a)(7)-Best Interests of Creditors...................... 12

    H.      Bankruptcy Code Sections 1129(a)(8), (10), and (15) ....................................... 12

        1.      11 U.S.C. Section 1191(c)(1) ................................................................ 12

        2.      11 U.S.C. Section 1191(c)(2) ................................................................ 13

        3.      11 U.S.C. Section 1191(c)(3) ................................................................ 13

    I.      Bankruptcy Code Sections 1129(a)(9)-Administrative and Priority Claims..................... 13

    J.      Bankruptcy Code Sections 1129(a)(11)-Feasibility. .......................................... 14

    K.      Bankruptcy Code Sections 1129(a)(12)-All Bankruptcy Fees Have Been Paid..................................................................................................................... 14

L.    Bankruptcy Code Sections 1129(a)(13)-Retiree Benefits .................................................. 14

M.    Bankruptcy Code Sections 1129(a)(14)-Domestic Support Obligations ......................... 14

N.    Bankruptcy Code Sections 1129(a)(16)-Transfers by Non-Profit
      Corporation.......................................................................................................... 15

V.    The Debtor Is Entitled To Enforce Dues and Assessments Pursuant to Valid
      Covenants, Conditions, and Restrictions............................................................................ 15

A.    Requirements for Amendments to the 2017 CC&Rs ................................................. 15

B.    Proposal and Subsequent Discussion of the 2019 Amendments to CC&Rs ..................... 16

C.    Approval of CC&Rs Amendments on July 8, 2019 ...................................................... 17

II. The Assessments Were Proper Under the CC&Rs ............................................................... 19

VI.   CONCLUSION ...................................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*In re Acequia, Inc.* 787 F.2d 1352, 1358 (9th Cir. 1986) ............................................................. 6 14

*In re Holthoff*, 58 B.R. 216, 218 (Bankr. E.D. Ark. 1985) ................................................................ 6

*In re Prudential Energy Company*, 58 B.R. 857, 862 (Bankr. S.D.N.Y. 1986) ................................ 6

*In re Future Energy Corporation*, 83 B.R. 470 (Bankr. S.D. Ohio 1988) .................................. 6, 10

*Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648-49 (2nd Cir. 1988) ............................ 6, 7, 8, 14

*In re DBSD N. Am., Inc.* 634 F.3d 79, 106-07 (2d Cir. 2011) .......................................................... 8

*In re Drexel Burham Lambert Grp., Inc.* 138 B.R.723 (Bankr. S.D.N.Y. 1992) ............................... 8

*In re Texaco, Inc.*, 84 B.R. 893, 906-07 (Bankr. S.D.N.Y. 1988); ................................................... 9

*Andrews v. Coopersmith (In re Downtown In Club III)*, 89 B.lR. 59 (B.A.P. 9th Cir. 1988)............. 9

*In re Nite Lite Inns*, 17 B.R. 367, 370 (Bankr. S.D. Cal. 1982). .................................................... 10

In *In re Stolrow's Inc.*, 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988) ................................................... 10

*Jorgensen v. Federal Land Bank of Spokane) In re Jorgensen,* 66 B.R. 104, 108-09 (B.A.P.
      9th Cir 1986) ................................................................................................................... 10

*In re Coastal Equities, Inc.*, 33 B.R. 848 (Bankr. S.D. Cal. 1983)................................................. 10

*In re Landscaping Services, Inc.*, 39 B.R. 588 (Bankr. E.D.N.C. 1984). ...................................... 12

*In re Pike's Peak Water Co.*, 779 F.2d 1456, 1460 (10th Cir. 1985) ............................................ 14

*Pullman St. Prop. v. Ono Enters. LLC*, 2019 Cal. Super. LEXIS 17849 ........................................15

*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US) LLC* (2012) 55
    Cal.4th 223, 238-39 ...........................................................................................................15

**Statutes**

11 U.S.C. Section 1111(b)...................................................................................................................1

11 U.S.C. Section 1191 ...........................................................................................................2, 6, 21

11 U.S.C. Section 1191(a)...................................................................................................................2

11 U.S.C. Section 1191(b).............................................................................................................2, 21

11 U.S.C. Section 1129(a)...................................................................................................2, 6, 13, 21

11 U.S.C. Section 1129(a)(1)-(16) .....................................................................................................2

11 U.S.C. Section 1129(a)(8) ........................................................................................................2, 12

11 U.S.C. Section 1129(a)(10) ......................................................................................................2, 12

11 U.S.C. Section 1129(a)(15) ......................................................................................................2, 12

11 U.S.C. Section 507 ......................................................................................................................2,

11 U.S.C. Section 1122(b)................................................................................................................2,

11 U.S.C. Section 330 .......................................................................................................................3

11 U.S. C. Section 507(a)(8) ..............................................................................................................5

11 U.S. C. Section 1191(a)..................................................................................................................6

Bankruptcy Code section 1129(a)(1)...............................................................................................6, 9

Bankruptcy Code 1122 .................................................................................................................6, 7, 9

Bankruptcy Code 1123 .................................................................................................................6, 7, 9

11 U.S.C. Section 1123(a) ..................................................................................................................7

Bankruptcy Code section 1123(a)(1)....................................................................................................7

Bankruptcy Code section 507(a)(2)......................................................................................................7

Bankruptcy Code section 507(a)(3)......................................................................................................7

Bankruptcy Code section 507(a)(8)......................................................................................................7

Bankruptcy Code section 1123(a)(4) ...............................................................................................7, 12

Bankruptcy Code section 1123(a)(5)....................................................................................................8

Bankruptcy Code section 1123(a)(6).................................................................................................8

Bankruptcy Code section 1123(a)(7).................................................................................................8

Bankruptcy Code section 1123(b)(2) ................................................................................................8

Bankruptcy Code section 1190 .........................................................................................................9

Bankruptcy Code Section 1129(a)(2) ...........................................................................................9, 10

Bankruptcy Code Section 1121 .........................................................................................................9

Bankruptcy Code Section 1127 .........................................................................................................9

11 U.S.C. Section 1181(b) .................................................................................................................9

Bankruptcy Code Section 1129(a)(3) ..........................................................................................10, 11

11 U.S.C. 1112(c)............................................................................................................................10

Bankruptcy Code Section 1129(a)(4) ..............................................................................................11

Bankruptcy Code Section 1129(a)(5) ..............................................................................................11

Bankruptcy Code Section 1129(a)(6) ..............................................................................................11

Bankrutpcy Code Section 1129(a)(7) ..............................................................................................12

11 U.S.C. Section 510(a) .................................................................................................................12

11 U.S.C Section 1191(c)............................................................................................................12, 13

11 U.S.C. Section 1191(c)(1) ..........................................................................................................12

11 U.S.C. Section 1129(b)(2)(A) .....................................................................................................12

11 U.S.C. Section 1191(c)(2) ..........................................................................................................13

11 U.S.C. Section 1191(d).............................................................................................................13

11 U.S.C. Section 1191(c)(3) ..........................................................................................................13

Bankruptcy Code Sections 1129(a)(9) ........................................................................................13, 14

11 U.S.C. Section 507(a)(1) .............................................................................................................13

11 U.S.C. Section 1129(a)(9)(A)......................................................................................................13

Bankruptcy Code Sections 1129(a)(11) ...........................................................................................14

Bankruptcy Code Sections 1129(a)(12) ...........................................................................................14

28 U.S.C Section 1930 ....................................................................................................................14

Bankruptcy Code Sections 1129(a)(13) ...........................................................................................14

iv

Bankruptcy Code Sections 1129(a)(14) ................................................................................14, 15

Bankruptcy Code Sections 1129(a)(16) ...................................................................................15

Civil Code § § 5975, 6856....................................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Indian Canyon & 18th Property Owners ("Debtor") submits Bankrthe following Motion for Entry of an Order Confirming Debtor's Plan of Reorganization for Small Business Under Chapter 11 ("Confirmation Motion")[1] This Confirmation Motion is supplemented by the attached Declaration of Katherine Beneteau, the separately filed Proof of Service Regarding Voting Packages [DOC 164, and the evidence and argument offered by counsel at or before the hearing on confirmation of the Debtor's plan ("Confirmation Hearing").  In addition to the evidence contained in this Confirmation Motion and in the supporting declarations, pursuant to Federal Rule of Evidence 201, the Debtor respectfully requests that the Court take judicial notice of all pleadings, papers, documents, interim statements, and operating reports on file with the Court.

**I.      PRELIMINARY STATEMENT**Error! Not a valid bookmark self-reference.

On March 14, 2023, all creditors and interested parties were mailed copies of the following:

a.      Debtor's Second Amended Plan of Reorganization for Small Business Under Chapter 11 ("Plan") [Doc 162];

b.      Notice of: (1) Hearing on Confirmation of the Debtor's Plan of Reorganization for Small Business Under Chapter 11; (2) Deadline for Filing Objection to Confirmation of the Plan; (3) Deadline for Casting Votes to Accept or Reject the Plan; and (4) Deadline for a Holder of a Secured Claim to Make an Election Under 11 U.S.C. section 1111(b) [Doc 164]; and

c.      Ballot.

*The deadline for ballots to be received by Debtor's counsel, Reid & Hellyer APC, is May 2, 2023.   The results of the ballots received by Debtor's counsel will be tallied and submitted via a Declaration to be filed no later than May 9, 2023.  All creditors and parties in interest were provided notice that any objection to confirmation of the Plan must be filed and served by not later than fourteen (14) days after the filing and service (plus three days if service by mail) of Debtor's Confirmation Motion.  If any objections are filed, they will be addressed in a*

---

[1] Unless otherwise noted herein, capitalized terms in the Confirmation Motion have the meaning as defined in the Plan.

1 *supplemental brief to be filed no later than seven (7) days of the filing and service (plus three*

2 *days if service by mail) of the Objection.*

3     For the reasons set forth in this Confirmation Motion, the Plan should be confirmed.

4     **II.    CONFIRMATION CRITERIA HAS BEEN MET**

5     For the Court to confirm the Plan under subchapter V, it must be established that the Plan

6 complies with the requirements set forth in Section 1191.  Section 1191(a) provides that a court

7 shall confirm a plan only if all the requirements of Section 1129(a), other than paragraph (15), are

8 met.  Further, Section 1191(b) provides that if all applicable requirements of 1129(a), other than

9 paragraphs (8), (10), and (15), are met with respect to the plan, the court, on request from the

10 debtor, shall confirm the plan notwithstanding those sections if the plan does not discriminate

11 unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired

12 under, and has not accepted, the plan.

13     Section 1129(a) contains sixteen conditions precedent to confirmation.  In support of

14 confirmation, the Debtor has outlined the various matters which must be established at the

15 Confirmation Hearing and asserts that each of the requirements set forth in Sections 1129(a)(1)-

16 (16) have been fulfilled.  To the extent that the requirements of Sections 1129(a)(8), (10), and (15)

17 are not met, the Debtor submits that the Plan falls within the exception provided by Section

18 1191(b).

19     **III.    OVERVIEW OF CLASSIFICATION OF CLAIMS**Error! Not a valid bookmark

20 self-reference.

21     The Plan designates the following classes of claims and interests:

22     **A.  Classes of Priority Unsecured Claim.**

23     There are none.

24     **B. Class[es]of General Unsecured Claims**

25     General unsecured Claims are not secured by property of the estate and are not entitled to

26 priority under § 507(a) of the Code.   [Insert description of §1122(b) convenience class if

27 applicable.]

28

The following chart identifies the Plan's proposed treatment of Class 2, which contain general unsecured Claims against the Debtor:

| Class #1 | Descrip | Impairment | Treatment |
|---|---|---|---|
| | General Unsecured Class [including any claims set forth in Section 2.2.A, above] | Not impaired | See Exhibit 3 to Plan |

| Class #2 | Descrip | Impairment | Treatment |
|---|---|---|---|
| | General Unsecured/ Subordinated Class [including any claims set forth in Section 2.2.A, above] | Impaired | To be paid in full after payment of administrative expenses and unsecured claims. |

## 1  Treatment of Unclassified Claims

**Administrative Expense Claims**

The claims for costs or expenses of administrating the case which are allowed under section 507 ("Administrative Claims") shall be paid in full on the Effective Date of the Plan unless that claimant has agreed to different treatment. As defined in the Plan, the Effective Date is the first business day following the date that is 14 days after the entry of the confirmation order.

The following chart reflects the estimated Administrative Claims and their treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|

| | | |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | N/A | Payment through the Plan as follows: |
| Administrative Tax Claim | N/A | Payment through the Plan as follows: |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | N/A | Payment through the Plan as follows: |
| Professional fees, as approved by the Bankruptcy Court | 1.  Reid & Heller, APC (R&H) estimates fees in this case, assuming it is consensual, to be no more than approximately $80,000; and<br>2.  Dinsmore & Shohl, LLP (D&S) estimates fees in this case, assuming it is consensual, to be no more than approximately $475,000.00_____ | After approval, payment through the Plan as follows:<br>1.  R&H has $73,701.50 on hand in trust, remaining pre-petition retainer-Debtor expects to have remaining fees on hand at confirmation.<br>2.  Debtor expects to have fees on hand at confirmation. |
| Clerk's Office fees | N/A | Paid in full on the Effective Date. |
| Other Administrative Expenses | N/A | Payment through the Plan as follows: |

| Sub V Trustee | Estimated at no more than $20,500 if Debtor prevails on the motions to dismiss. | Upon application under § 330 and after Bankruptcy Court approval, payment through the Plan as follows: Debtor expects to have the fees on hand at confirmation. |
|---|---|---|
| TOTAL | $575,500.00 | |

The Plan provides that all Administrative Claims shall be paid in full on the Effective Date unless the claimant agrees to a different treatment and thus they are unimpaired and not entitled to vote on the Plan.

The Debtor is anticipating receiving an infusion of up to $1,500,000 from Diamond Financial Group, Inc. a Colorado Corporation ("DFG").  The Debtor will pay any necessary Administrative Claims in full from funds on hand on the Effective Date.

In the event that the Debtor becomes aware of any disputed Administrative Claim, funds necessary for payment of that claim in full shall be set aside by the Debtor post-confirmation pending a determination by the Court as to the status of any such claim.

**2      Priority Tax Claims**

Priority tax claims are certain unsecured income, employment, and other taxes described by 11 U.S.C. section 507(a)(8).

The following chart lists the Section 507(a)(8) Priority Tax Claims:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|

| IRS | $100 | | Paid in full on effective date of Plan |
|-----|------|---|----------------------------------------|
| | | | |
| | | | |
| | | | |
| | | | |

The Allowed Claim will be paid in full on the Effective Date.

/ / /

### IV.    COMPLIANCE WITH 11 U.S.C. Section 1191, 1129(aError! Not a valid bookmark self-reference.)

To confirm the Plan under Subchapter V, the Court must find that plan proponent has satisfied the provisions of 11 U.S.C. section 1191.  Pursuant to section 1191(a), the Court shall confirm a plan under subchapter V only if the requirements of Section 1129(a), other than paragraph (15) of that section, are met.

The Bankruptcy Court must hold an evidentiary hearing on confirmation of a plan, *In re Acequia, Inc.* 787 F.2d 1352, 1358 (9th Cir. 1986), and consider any objections of creditors; the court has an independent duty to determine whether the plan has met all of the requirements necessary for confirmation.  *In re Holthoff*, 58 B.R. 216, 218 (Bankr. E.D. Ark. 1985).

The proponent of a plan of reorganization has the burden of proof on each element of Section 1129(a).  *In re Prudential Energy Company*, 58 B.R. 857, 862 (Bankr. S.D.N.Y. 1986).  However, for those creditors who object, it is up to that objecting party to "produce enough evidence to establish the validity of the objection before the ultimate burden of proving that all the requirements of section 1129(a) have been met is shifted to the Plan proposed."  *In re Future Energy Corporation*, 83 B.R. 470 (Bankr. S.D. Ohio 1988).

For the reasons that follow, the Debtor believes that it has satisfied its burden, that the Plan fully complies with all of the requirements of sections 1191 and 1129 of the Bankruptcy Code, and that confirmation of the Plan is proper.

### A.    Bankruptcy Code section 1129(a)(1) - Plan Compliance

6

1

2     Bankruptcy Code section 1129(a)(1) requires that a debtor comply with the "applicable

3 provisions including sections 1122 and 1123. The phrase "applicable provisions" has been

4 interpreted to mean sections 1122 and 1123 which govern the classification of claims and interests

5 and the contents of a plan of reorganization. *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648-49

6 (2nd Cir. 1988). Because section 1190 imposes additional requirements for subchapter V cases,

7 this Confirmation Motion will also confirm that the Plan complies with section 1190.

8     **1.    Bankruptcy Code section 1122**

9     Bankruptcy Code section 1122 governs the classification of claims and interests and

10 requires that a class must contain claims or interests "substantially similar" to the other claims or

11 interests of such class. The Plan satisfies classification requirements under section 1122 because

12 each class differs from the others in a legal or factual nature or based on other relevant criteria.

13     Class 1 consists of general unsecured claims

14     Class 2 consists of general unsecured/subordinated

15     The requirements *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648-49 (2nd Cir. 1988). are

16 satisfied because the claims of each class consist of claims or interests which are substantially

17 similar to the other claims and interests within such Class.

18     **2.    Bankruptcy Code section 1123**

19     Bankruptcy Code section 1123 outlines both mandatory and permissive contents of a plan.

20 As detailed below, the Plan contains each of the mandatory provisions required under section

21 1123(a):

22     a.    Bankruptcy Code section 1123(a)(1) requires that a plan designates classes of claims

23 other than claims of a kind specified in sections 507(a)(2), 507(a)(3), and 507(a)(8) of the

24 Bankruptcy Code. Article 2, Sections 2.1-2.2 of the Plan satisfy the requirements of section

25 1123(a)(1) by designating all classes of claims other than claims specified in sections 507(a)(2),

26 507(a)(3), and 507(a)(8) of the Bankruptcy Code.

27

28

b.   Bankruptcy Code section 1123(a)(2) requires that a plan "specify any class of claims or interests that is not impaired under the Plan." The Plan specifies which classes are unimpaired class of claims. There is one impaired class.

c.   Bankruptcy Code section 1123(a)(3) requires that a plan "specify the treatment of any class of claims or interests that is impaired under the Plan." There is one impaired class.

d.   Bankruptcy Code section 1123(a)(4) requires that a plan provide the same treatment for each claim or interest, unless the holders of a particular claim agree to less favorable treatment of such claim. The Plan identifies the treatment of claims and interests and provides that each holder of a claim or interest within each class is provided the same treatment as other claims or interests within that class. Because each holder of a claim or interest within a class has been afforded equal treatment, no holder of a claim or interest has been asked to or has agreed to less favorable treatment of such claim or interest.

e.   Bankruptcy Code section 1123(a)(5) requires that a plan provide an adequate means for the plan's implementation. However, success of a plan need not be guaranteed. *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648-49 (2nd Cir. 1988); *In re DBSD N. Am., Inc.* 634 F.3d 79, 106-07 (2d Cir. 2011). "The key element of feasibility is whether there exists the reasonable probability that the provisions of the Plan can be performed." *In re Drexel Burnham Lambert Grp., Inc.* 138 B.R. 723 (Bankr. S.D.N.Y. 1992). In this case, the Debtor asserts that there is a reasonable probability that the provisions of the Plan can be performed. The means of executing the Plan are detailed in Article 2, Section 2.5 of the Plan. Specifically, the Plan will be funded with an infusion of up to $1,500,000 from Diamond Financial Group, Inc. a Colorado Corporation ("DFG") and from dues and assessments. The Debtor will contribute to the Plan its projected disposable income for the three or five year period following the Effective Date, or the estimated sum of $981,500 over such period. The Debtor will provide its future disposable income to fund payments to creditors as is necessary for execution of the Plan. The Debtor asserts that adequate means to implement the Plan exist and that the requirements of Bankruptcy Code section 1123(a)(5) are satisfied.

f.   Bankruptcy Code section 1123(a)(6) **Error! Not a valid bookmark self-reference.** requires that the corporate charter of a reorganized debtor prohibit the issuance of non-voting

1  securities so that there is an appropriate distribution of power among all voting equity classes.

2  Because the Debtor is a nonprofit property owners association without any equity holders, this

3  factor is not applicable.

4         g.       Bankruptcy Code section 1123(a)(7**Error! Not a valid bookmark self-reference.**)

5  requires that the selection of any officer, director or trustee under a plan is consistent with the

6  interest of creditors, equity security holders and public policy.  Under the Plan, upon the Effective

7  Date, the Debtor will continue to be in possession and control as debtor-in-possession.  Therefore,

8  this section is inapplicable.

9         h.       Bankruptcy Code section 1123(b)(2) specifies that, subject to Bankruptcy Code

10  section 365, a plan may provide for the assumption, rejection, or assignment of any executory

11  contract or unexpired lease not previously rejected.  As set for in the Plan, Debtor is not assuming,

12  rejecting, or assigning any contracts or leases.  Therefore, this section is inapplicable.

13         i.       Bankruptcy Code section 1123(b)(2) specifies that a plan may provide for the

14  settlement or adjustment of any claim or interest belonging to the debtor or to the estate.  Under the

15  Plan, there are no settlements or adjustments to be made to any claims or interests belonging to the

16  Debtor in this case.

17      **3.**    **Bankruptcy Code Section 1190**

18         Section 1190 specifies what a subchapter V case reorganization plan may and must contain,

19  in addition to the general chapter plan requirements of section 1123.  As detailed below, the Plan

20  contains each of the mandatory provisions required under section 1190:

21         Under section 1190, a plan shall include (1) a brief history of the business operations of the

22  debtor; (2) a liquidation analysis; and (3) projections with respect to the ability of the debtor to

23  make payments under the proposed plan of reorganization.  Each of those requirements are met by

24  the Plan.  A brief description of the Debtor is provided for in Article 1, Sections 1.1-1.7, while a

25  liquation analysis and financial projections are attached to the Plan as Exhibits 3-5.

26         Based on the foregoing, the Plan complies with all of the provisions of sections 1122, 1123,

27  and 1190 of the Bankruptcy Code and, therefore, complies with section 1129(a)(1) of the

28  Bankruptcy Code.

1   **B.      Bankruptcy Code Section 1129(a)(2)**

2         Bankruptcy Code section 1129(a)(2) provides that a plan may be confirmed only if the

3   proponent of the plan has complied with applicable provisions of Chapter 11.  Generally, in chapter

4   11, the principle purpose of this provision is to insure that the plan proponent has complied with the

5   requirements of 11 U.S.C. section 1125 on the solicitation of acceptance of the plan.  *In re Texaco,*

6   *Inc.*, 84 B.R. 893, 906-07 (Bankr. S.D.N.Y. 1988); and with the requirements of sections 1121 and

7   1127 of the Banrkuptcy Code. A*ndrews v. Coopersmith (In re Downtown In Club III*), 89 B.lR. 59

8   (B.A.P. 9th Cir. 1988).

9         However, 11 U.S.C. sections 1121, 1125, and 1127 are inapplicable in subchapter V cases.[2]

10  11 U.S.C. section 1181.  Irrespective of those provisions, the proponents of the Plan have complied

11  with all applicable provisions of Chapter 11.  Because the proponents of the Plan have satisfied the

12  requirements of Chapter 11, the Plan satisfies the requirements of section 1129(a)(2) of the

13  Bankruptcy Code.

14  **C.      Bankruptcy Code Section 1129(a)(3)- Plan Proposed in Good Faith** Error! Not a valid

15  bookmark self-reference.

16        Bankruptcy Code section 1129(a)(3) requires a plan to have been proposed in good faith

17  and not by any means forbidden by law.  A plan is proposed in good faith if there is a "reasonable

18  likelihood that the Plan will achieve a result consistent with the objectives and purposes of the

19  Bankruptcy Code." *In re Nite Lite Inns*, 17 B.R. 367, 370 (Bankr. S.D. Cal. 1982).  In *In re*

20  *Stolrow's Inc.*, 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988), the court stated:

21        Good faith in proposing a Plan of Reorganization is assessed by the Bankruptcy Judge and
    viewed under the totality of the circumstances. (*Jorgensen v. Federal Land Bank of Spokane) In re*

22  *Jorgensen*, 66 B.R. 104, 108-09 (B.A.P. 9th Cir 1986).  Good faith requires . . . a fundamental
    fairness in dealing with one's creditors.  Id. at 109.   The Bankruptcy Judge is in the best position to

23  assess the good faith of the parties.  *Id.*

24

25        One factor held to be determinative of whether a plan has been proposed in good faith is

26  whether or not the trustee or a debtor-in-possession has abided by all court orders.  See, *In re*

27  _____

28  [2] Section 1125 does not apply in a case under subchapter V without court order.  11 U.S.C. section
    1181(b).  Because no court order has been entered in this case, section 1125 is inapplicable.

*Coastal Equities, Inc.*, 33 B.R. 848 (Bankr. S.D. Cal. 1983).  The Debtor asserts that the Plan has been proposed in good faith and that the Debtor has complied with all court orders.

Another indicia of the lack of good faith in the proposing of a plan concerns the treatment of insiders of the debtor.  Attempts by the debtor to give favorable treatment to insiders show a lack of the good faith required of a plan debtor.  *In re Future Energy Corp.*, 83 B.R. 470 (S.D. Ohio 1988).  Here, the Plan does not provide favorable treatment to insiders.  Furthermore, under the Plan, creditors will receive more than they would in a Chapter 7 and payments will commence sooner as compared to a hypothetical Chapter 7 liquidation.[3]  Debtor asserts that a liquidation under Chapter 7 would result in lower distributions being made to creditors than those provided for in the Plan because, among other reasons; (1) additional administrative expenses would be incurred in a chapter 7 liquidation, specifically those of a chapter 7 trustee charging statutory fees from 3% to 25% of disbursements and any costs of counsel to the chapter 7 trustee to become familiar with the facts and circumstances of the case; and (2) the additional delay in distribution that would occur if the Debtor's case was hypothetically converted to Chapter 7.

The Debtor has considered the options and has concluded that the Plan offers the best and highest recoveries for creditors of the estate.  The Debtor has concluded that the Plan provides greater potential recoveries for creditors than any feasible alternative.

Accordingly, the Plan is proposed in good faith and the provisions of 11 U.S.C. section 1129(a)(3) have been met.

**D.      Bankruptcy Code Section 1129(a)(4)- Disclosure of Payments**Error! Not a valid bookmark self-reference.

11 U.S.C. section 1129(a)(4) requires that any payment made to or by the proponent, by the debtor, or any person issuing securities or acquiring the property under the plan, for services or for costs and expenses in or connection with the case, or in connection with the plan and incidents to the case, has to be approved by or subject to the approval of the Court, as reasonable.

In this case, all professionals rendering pre-confirmation services shall receive compensation from the Estate only with prior Court approval.  All payments made or promised under the Plan have been disclosed to the Court in the Plan.  The Court has granted the Debtor's application for order authorizing employment of Reid & Hellyer, APC as Debtor's General Counsel, and Dinsmore & Shohl, LLP as Debtor's Special Counsel [Doc 41and 43].  The Debtor

---

[3] Because the Debtor is a nonprofit, the Bankruptcy Code prohibits the conversion to chapter 7. See 11 U.S.C. 1112(c).

1  shall not pay any pre-confirmation or post-confirmation fees and expenses of the professionals

2  employed in this case unless they have been approved by the Court.

     Thus, the provisions of 11 U.S.C. section 1129(a)(4) have been met.

3  **E.      Bankruptcy Code Section 1129(a)(5)- Identification of Officers, Directors, Trustee**

4       11 U.S.C. section 1129(a)(5) requires that the proponent of the plan disclose, prior to

5  confirmation, the identity and affiliates of any individuals proposed to serve, after confirmation of

6  the plan, as directors, officers, or voting trustees and that the appointment to or continuance in

7  office of such individuals, is consistent with the interests of creditors and equity security holders

8  and with public policy.   11 U.S.C. section 1129(a)(5) also requires that the debtor disclose the

9  identity of any insider that will be employed or retained by the reorganized debtor and the nature of

  any compensation such insider will receive.

10       The Debtor has made such disclosures in Article 2, Section 2.7.  Accordingly, the Debtor

11  submits that the provisions of 11 U.S.C. section 1129(a)(5) have been met.

12  **F.      Bankruptcy Code Section 1129(a)(6)- Regulatory Approval** Error! Not a valid bookmark

13  self-reference.

14       Bankruptcy Code section 1129(a)(6) provides for regulatory approval of any regulatory

15  commission with jurisdiction over the debtor.   This provision of the Code is inapplicable in this

  case because no rate changes are contemplated by the Plan.

16

17  **G.      Bankruptcy Code Section 1129(a)(7) -Best Interests of Creditors**

18       11 U.S.C. section 1129(a)(7) requires, with respect to every impaired class that does not

19  unanimously accept the plan, that the holder of a claim in such class will receive or retain under the

20  Plan, on account of such claim or interest, property of a value, as of the Effective Date of the plan,

21  not less than the holder would receive if the Debtor were liquidated under Chapter 7.  This

22  provision is referred to as the liquidation test and is commonly referred to as the "best interests of

  creditors" test ("Best Interests Test").

23       Under the Best Interests Test, the Court must determine that the creditors of impaired

24  classes will receive as much or more through the plan than they would in a Chapter 7 liquidation.

25  *In re Landscaping Services, Inc.*, 39 B.R. 588 (Bankr. E.D.N.C. 1984).

26       Here, the Plan meets the requirements of the Best Interests Test in that no Class receives

27  less than it would in a hypothetical Chapter 7 liquidation. See, Exhibit 5 to the Plan. The Debtor

  asserts that the Best Interests Test has been met and in fact, creditors stand to receive more under

28

1   the Plan than they would in a hypothetical chapter 7.  Thus, the Best Interests Test under section

2   1129(a)(7) has been met.

**H.    Bankruptcy Code Sections 1129(a)(8), (10), and (15)**

3         11 U.S.C. section 1191(b) provides: "Notwithstanding section 510(a) of this title, if all of

4   the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), and (15)

5   of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the

6   plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly,

7   and is fair and equitable, with respect to each class of claims or interests that is impaired under, and

8   has not accepted, the plan.

9         As previously discussed in the analysis of Bankruptcy Code section 1123(a)(4), because

10  each holder of a claim or interest within a class has been afforded equal treatment, no holder of a

11  claim or interest has been asked to or has agreed to less favorable treatment of such claim or

12  interest.  Therefore, in order to comply with section 1191(b), the Plan must be fair and equitable.

13        Under 1191(c), the condition that a plan is fair and equitable with respect to each class of

14  claims or interests includes three requirements:

15        **1.    11 U.S.C. Section 1191(c)(1)**
     The first requirement is that with respect to a class of secured claims, the Plan meets the

16  requirements of section 1129(b)(2)(A).

17        **2.    11 U.S.C. Section 1191(c)(2)**

18        Section 1191(c)(2) requires that as of the Effective Date of the plan, the plan provides that

19  all of the projected disposable income of the debtor to be received in the 3-year period, or such

20  longer period not to exceed 5 years as the court may fix, beginning on the date the first payment is

21  due under the plan, will be applied to make payments under the plan.

22        As set forth in Exhibit 3 to the Plan, the Debtor's financial projections show that the Debtor

23  will have projected disposable income (as defined by section 1191(d) of the Bankruptcy Code), for

    the period described in section 1191(c)(2), of approximately $981,500.  The Debtor will make

24  payments over a five year period, with the final Plan payment expected to be paid on December 31,

25  2027.

26        Therefore, the Plan complies with the requirements of 11 U.S.C. section 1191(c)(2).

27        **3.    11 U.S.C. Section 1191(c)(3)**

28

1    The final requirement under Section 1191(c) is that the debtor will be able to make all

2    payments under the plan.  As set forth in Exhibits 3-4 of the Plan, the Debtor's statement of cash

3    flow and monthly balance sheet shows that the Debtor will be able to pay approximately $60,000-

4    $100,000 per year, plus roughly $680,000 in either the third or fifth year of the Plan.  The Debtor's

5    commitment under the Plan is to pay $60,000-$100,000 per year, plus roughly $680,000 in either

6    the third or fifth year of the Plan.

7    The Debtor submits that it will be able to make all payments under the Plan.  Therefore, the

8    Plan complies with the requirements of 11 U.S.C. section 1191(c)(3).

9    Because the Plan complies with each of the requirements set forth in section 1191(c), the

10   Plan falls within the exception provided for in section 1191(b).  Therefore, paragraphs (8), (10),

11   and (15) of section 1129(a) do not need to be met.

12   **I.    Bankruptcy Code Sections 1129(a)(9)- Administrative and Priority Claims**

13   11 U.S.C. section 1129(a)(9) requires particular treatment with respect to priority claims.

14   Under subparagraph (A) of that section, administrative claims and expenses entitled to priority

15   under 11 U.S.C. section 507(a)(1) are entitled to receive cash on the Effective Date of the plan

16   equal to the allowed amount of the claim, unless the holder of such claim agrees to a different

17   treatment.  11 U.S.C. section 1129(a)(9)(A).

18   Article 2, Section 2.1(A) of the Plan provides for the treatment of Administrative Claims.

19   Based upon the above, the requirements of 11 U.S.C. section 1129(a)(9) have been met.

20   **J.    Bankruptcy Code Sections 1129(a)(11)- Feasibility**Error! Not a valid bookmark self-

21   reference.

22   Bankruptcy Code  section 1129(a)(11) requires that the debtor show that confirmation of

23   the plan is not likely to be followed by the liquidation or the need for further financial

24   reorganization of the debtor.

25   In order to meet the feasibility standard, a debtor must "demonstrate that the plan has a

26   reasonable probability of success." *In re Acequia, Inc.*, 787 F.2d at 1364; *In re Pike's Peak Water*

27   *Co.*, 779 F.2d 1456, 1460 (10th Cir. 1985).  In view of the fact that the success of the plan depends

28

1   in large part on future events, "success need not be guaranteed." *Kane v. Johns-Manville Corp.*,

2   843 F.2d 636, 649 (2d Cir. 1988).

3   Based on these standards, the Plan has met the feasibility requirements for confirmation.

4   As set forth in Article 2, Section 2.5 of the Plan, the Plan will be funded by an infusion of up to

5   $1,500,000 from Diamond Financial Group, Inc. a Colorado Corporation ("DFG"), and from

6   regular and special dues and assessments.  The continued operation of the Debtor will allow the

7   Debtor to make the necessary payments under the Plan.

8   Based upon the foregoing, the Plan satisfies the feasibility requirements of 11 U.S.C.

9   section 1129(a)(11) and should be confirmed.

10  **K.    Bankruptcy Code Sections 1129(a)(12)- All Bankruptcy Fees Have Been Paid**Error!

11  Not a valid bookmark self-reference.

12  Bankruptcy Code  section 1129(a)(12) requires that all Bankruptcy Court fees payable

13  pursuant to 28 U.S.C. section 1930 have been paid, or the plan provides for the payments of all

14  such fees on the Effective Date of the plan.  The Debtor is in compliance with all of the fee

15  requirements set forth in Section 1930 of the Code and will pay outstanding costs owing, if any, in

16  full on the Effective Date.

17  **L.    Bankruptcy Code Sections 1129(a)(13) -Retiree Benefits**Error! Not a valid bookmark

18  self-reference.

19  Because Debtor has never had any employees, the provisions of 11 U.S.C. 1129(a)(13) are

20  not applicable to this case.

21  **M.    Bankruptcy Code Sections 1129(a)(14)- Domestic Support Obligations**Error! Not a

22  valid bookmark self-reference.

23  The Debtor has no domestic support obligations and the provisions of 11 U.S.C.

24  1129(a)(14) are not applicable to this case.

25  **N.    Bankruptcy Code Sections 1129(a)(16) -Transfers by Non-Profit Corporation**

26  Section 1129(a)(16) of the Bankruptcy Code requires that transfers of property in a plan by

27  a non-profit corporation or trust be in accordance with applicable non-bankruptcy law.  The Debtor

28

1  is not making any such transfers and the provisions of 11 U.S.C. 1129(a)(16) are not applicable to

2  this case.

3  **V.      The Debtor Is Entitled To Enforce Dues and Assessments Pursuant to Valid**

4  **Covenants, Conditions, and Restrictions**

5        The original Covenants, Conditions, and Restrictions ("CC&Rs") (hereinafter "2017

6  CC&Rs") were made effective on April 7, 2017 when Kenneth Dickerson signed the 2017 CC&Rs

7  on behalf of Coachillin' Holdings, the declarant. The 2017 CC&Rs were then recorded with the

8  Riverside County recorder's office on December 27, 2018. (Declaration of Katherine Beneteau ("K.

9  Beneteau Decl."), ¶ 2.) Recorded CC&Rs "enjoy a statutory presumption of reasonableness, which

10  requires that [they] be enforced unless they are wholly arbitrary, violate a fundamental public policy,

11  or impose a burden on the use of affected land that far outweighs any benefit." *Pullman St. Prop. v.*

12  *Ono Enters. LLC*, 2019 Cal. Super. LEXIS 17849, *13-14 citing *Pinnacle Museum Tower Assn. v.*

13  *Pinnacle Market Development (US) LLC* (2012) 55 Cal.4th 223, 238-39; see also Civil Code §§ 5975,

14  6856. (See 2017 CC&Rs at pg. 2.)

15  **A. Requirements for Amendments to the 2017 CC&Rs**

16        Pursuant to the 2017 CC&Rs, the CC&Rs may be amended if 67% of the voting shares so

17  agree. Specifically, the 2017 CC&Rs provide:

18      Provided that Parcel Owners representing in the aggregate at least 67% of the Voting
Shares (excluding the number of votes as to which voting rights are suspended at the

19      time of the subject vote) so agree, this Declaration may be amended, modified or
revised from time to time to effect any amendment, modification or revision that is

20      not a Minor Amendment.

21      (2017 CC&Rs at pg. 58, Art. 12.2)

22        Pursuant to the 2017 CC&Rs, each individual lot's voting share is determined by the lot's

23  percentage of the project as a whole. The 2017 CC&Rs provide "'Exhibit D' sets forth each Parcel's

24  percentage of (i) the whole regarding each Parcel's share for Common Areas assessment purposes

25  and (ii) the Voting Shares." (2017 CC&Rs at pg. 10.)

26        Further, the Property Owners Association's ("POA") Bylaws (attached as Exhibit E to the

27  2017 CC&Rs) provide that there are three voting classes. Voting Class A includes all parcel owners

28  except Coachillin Holdings. Voting Class A members "shall be entitled to a number of votes which

1  shall be calculated based upon a fraction, the numerator of which shall be the gross square footage

2  of the Owner's Parcel(s) as set forth in the Declaration and the denominator of which shall be the

3  aggregate square footage of all the Parcels as set forth in the Declaration multiplied by one hundred

4  (100) and rounded to the nearest whole number." (See Bylaws at pg. 5, § 3.6.1.) Voting Class B is

5  Coachillin Holdings, which "shall be entitled to a number of votes which shall be calculated based

6  upon a fraction the numerator of which shall be the gross square footage of the Declarant's Parcel(s)

7  as set forth in the Declaration and the denominator of which shall be the aggregate square footage of

8  all the Parcels as set forth in the Declaration, multiplied by three hundred (300) and rounded to the

9  nearest whole number." (See Bylaws at pg. 6, § 3.6.2.)

10      The California Commercial and Industrial Common Interest Development Act provides that

11  CC&Rs may be amended according to the declaration and an amendment to CC&Rs is valid if all of

12  the following have been met:

> (1) The proposed amendment has been delivered by individual notice to all members not less than 15 days and not more than 60 days prior to any approval being solicited. (2) The amendment has been approved by the percentage of members required by the declaration and any other person whose approval is required by the declaration. (3) That fact has been certified in a writing executed and acknowledged by the officer designated in the declaration or by the association for that purpose, or if no one is designated, by the president of the association. (4) The amendment has been recorded in each county in which a portion of the common interest development is located. (Cal Civ Code § 6620.)

18  **B. Proposal and Subsequent Discussion of the 2019 Amendments to CC&Rs**

19      On February 26, 2019, in advance of the March 6, 2019 POA meeting, Katherine Beneteau

20  (nee Dickerson) sent the members of the POA redlined CC&Rs, which included all proposed

21  changes. (Declaration of Katherine Beneteau ("K. Beneteau Decl."), ¶¶ 3-4, Exhibits A-B.) Beneteau

22  sent these proposed revisions to solicit any feedback on the changes. (*Id.*)

23      On March 6, 2019, the POA held a meeting for the members at which the proposed changes

24  to the CC&Rs were discussed. (K. Beneteau Decl., ¶ 5, Exhibit C.) A motion was made to postpone

25  the vote on the proposed changes until March 25, 2019. (*Id.*) Subsequently, the vote on the

26  amendments were postponed numerous times, giving POA members ample opportunity to review

27  and discuss the proposed amendments at POA meetings on March 25, 2019, April 29, 2019, June 12,

28  2019 and July 7, 2019. (K. Beneteau Decl., ¶ 6, Exhibits D-G.)

1    The clean version of the proposed amended and restated CC&Rs was sent to all members on

2  May 15, 2019, 54 days prior to the vote on approval of the amended and restated CC&Rs. (K.

3  Beneteau Decl., ¶ 7, Exhibits H.)

4    The meeting minutes from July 7, 2019 outline the specific changes to the CC&Rs,

5  memorialize that each of the changes were discussed, and reflect that various compromises were

6  made in response to individual lot owners' comments and suggestions. (K. Beneteau Decl., ¶ 8,

7  Exhibit G.) In particular, the final approved amendments to the CC&Rs reflect edits as a result of

8  discussions with Barry Ross (counsel for the owners of lots 13 and 27) and Lori Bessler (counsel for

9  the owners of lot 2).(*Id.*)

10  **C. Approval of CC&Rs Amendments on July 8, 2019**

11    On July 8, 2019, the amendments to the CC&Rs were voted on, which was recorded in the

12  meeting minutes. (K. Beneteau Decl., ¶ 9, Exhibits I.) As reflected in the meeting minutes, the parcel

13  owners for lots 1, 4-6, 8, 9, 11, 12, 14-17, 19-26, and 29-43 all voted to approve the amendments.

14  The owners for lot 2 abstained. The owners for lots 3, 7, 10, and 28 were absent. Only lots 13, 18,

15  and 27 voted against the amendments. (*Id.*) The vote was recorded in the July 8, 2019 meeting

16  minutes which was signed by Katherine Dickerson as Secretary of the Association and Kirsten

17  Dickerson as the Executive Director of the Association.

18    Given each lot's percentage as provided in the 2017 CC&Rs, the below table shows the total

19  voting shares for the July 8, 2019 vote on the amendments to 2017 CC&Rs. (*See* Exhibit D to 2017

20  CC&Rs "Parcels Percentage of the Whole Project".)

| Parcel | Voting Class | Vote | Percentage | Voting Shares | Voting Shares in Favor of Approval |
|---|---|---|---|---|---|
| 1 | B | Approve | 1.07 | 3.21 | 3.21 |
| 2 | A | Abstain | 1.41 | 1.41 | 0 |
| 3 | A | Absent | 1.41 | 1.41 | 0 |
| 4 | B | Approve | 1.42 | 4.26 | 4.26 |
| 5 | A | Approve | 1.26 | 1.26 | 1.26 |
| 6 | A | Approve | 1.62 | 1.62 | 1.62 |
| 7 | A | Absent | 1.62 | 1.62 | 0 |
| 8 | B | Approve | 1.63 | 4.89 | 4.89 |
| 9 | A | Approve | 2.46 | 2.46 | 2.46 |

| | | | | | |
|---|---|---|---|---|---|
| 10 | A | Absent | 1.53 | 1.53 | 0 |
| 11 | A | Approve | 1.53 | 1.53 | 1.53 |
| 12 | A | Approve | 1.53 | 1.53 | 1.53 |
| 13 | A | No | 2.69 | 2.69 | 0 |
| 14 | B | Approve | 2.31 | 6.93 | 6.93 |
| 15 | B | Approve | 1.94 | 5.82 | 5.82 |
| 16 | B | Approve | 1.4 | 4.2 | 4.2 |
| 17 | B | Approve | 1.4 | 4.2 | 4.2 |
| 18 | A | No | 2.66 | 2.66 | 0 |
| 19 | B | Approve | 1.28 | 3.84 | 3.84 |
| 20 | B | Approve | 1.33 | 1.99 | 3.99 |
| 21 | A | Approve | 1.33 | 1.33 | 1.33 |
| 22 | B | Approve | 2.64 | 7.92 | 7.92 |
| 23 | B | Approve | 1.64 | 4.92 | 4.92 |
| 24 | A | Approve | 1.58 | 1.58 | 1.58 |
| 25 | B | Approve | 4.9 | 14.7 | 14.7 |
| 26 | B | Approve | 1.1 | 3.3 | 3.3 |
| 27 | A | No | 1.57 | 1.57 | 0 |
| 28 | A | Absent | 1.73 | 1.73 | 0 |
| 29 | B | Approve | 2.7 | 8.1 | 8.1 |
| 30 | B | Approve | 4.23 | 12.69 | 12.69 |
| 31 | B | Approve | 2.46 | 7.38 | 7.38 |
| 32 | B | Approve | 2.6 | 7.8 | 7.8 |
| 33 | B | Approve | 5.55 | 16.65 | 16.65 |
| 34 | B | Approve | 2.57 | 7.71 | 7.71 |
| 35 | B | Approve | 5.49 | 16.47 | 16.47 |
| 36 | B | Approve | 1.59 | 4.77 | 4.77 |
| 37 | B | Approve | 1.41 | 4.23 | 4.23 |
| 38 | B | Approve | 1.51 | 4.53 | 4.53 |
| 39 | B | Approve | 3.23 | 9.69 | 9.69 |
| 40 | B | Approve | 1.44 | 4.32 | 4.32 |
| 41 | B | Approve | 1.44 | 4.32 | 4.32 |
| 42 | B | Approve | 1.45 | 4.35 | 4.35 |
| 43 | B | Approve | 3.1 | 9.3 | 9.3 |
| **Total** | | | | 220.42 | 205.8 |

Here, the 2019 amendments to the CC&Rs were approved with 205.8 voting shares out of the total 220.42 voting shares, or approximately 93.37% of the voting shares. Notably, this 93.37% vote came after lengthy discussions over the course of months, with each parcel owner having ample opportunity to review and propose edits to the amendments. Therefore, the 2017 CC&Rs were properly amended in July 2019 and the amended and restated CC&Rs were made effective as of July 8, 2019. (See Amended and Restated CC&Rs (hereinafter "2019 CC&Rs") at pg. 1.)

II. The Assessments Were Proper Under the CC&Rs

Both the 2017 CC&Rs and the 2019 CC&Rs give the POA the power to levy assessments on the individual parcel owners for the benefit of the Project and POA as a whole. (See 2017 CC&Rs at

1   pg. 41-49, Art. 9; 2019 CC&Rs at pg. 42-49, Art. 9.) The assessments levied on parcel owners shall

2   be either a "general assessment" or a "special assessment." (*Id.*) The 2017 CC&Rs and 2019 CC&Rs

3   do not require general assessments to be voted on by the members, nor do they require most special

4   assessments to be voted on by the members. (See 2017 CC&Rs at pg. 41-49, Art. 9; 2019 CC&Rs at

5   pg. 42-49, Art. 9.) Under the 2019 CC&Rs, the only assessment that must be approved by members

6   are special assessments levied in connection with the Initial Common Infrastructure. (2019 CC&Rs

7   at pg. 46, Art. 9.4.2.2.) Specifically, the 2019 CC&Rs provide:

8
9   > no such Special Assessment shall be levied in connection with any original
> construction of the Initial Common Infrastructure unless said Special Assessment is
> used for the reconstruction or replacement any capital improvement included in the
10  > Initial Common Infrastructure … without the prior approval of both the Association
> and Parcel Owners representing in the aggregate at least fifty-one percent (51%) of
11  > the Voting Shares.

12  (*Id.* at pg. 46, Art. 9.4.2.2.)

13

14      Under the 2017 CC&Rs, the only special assessments which need member approval are the

15  special assessments related to infrastructure and utilities. The corresponding provision in the 2017

16  provides: "no such Special Assessment shall be levied in connection with additional utilities or

17  infrastructure (i.e., those not a part of the Initial Common Infrastructure) without the prior approval

18  of both the Association and Parcel Owners representing in the aggregate at least fifty-one percent

19  (51%) of the Voting Shares." (*Id.* at 45-46, Art. 9.4.2.2.)

20      At all times from the formation of the POA until the present, Coachillin Holdings held over

21  51% of the voting shares for the POA. (K. Beneteau Decl., ¶ 10.) Therefore, all special assessments

22  for any cost related to the reconstruction or replacement of any capital improvements included in the

23  initial common infrastructure would pass with over 51% of the vote if such assessments were

24  supported by Coachillin' Holdings during a vote. Each of the special assessments charged to the

25  owners was discussed at various meetings of the Association and was only levied against parcel

26  owners if such assessment had the requisite approval. (K. Beneteau Decl., ¶ 11, Exhibit J.)

27      For the remainder of the special assessments and general assessments, the Association did

28  not need direct member approval. Instead, the assessments were valid if they were levied for one of

1  the enumerated purposes in the CC&Rs. For the general assessments, the Association was to provide

2  a cost estimate for the total common area expenses to parcel owners, and based on that budget

3  "including a reasonable allowance for contingencies and reserves, the Association shall at that time

4  determine the amount of the regular assessment (the 'Regular Assessment') to be paid by each Parcel

5  Owner based on such Parcel Owner's Allocable Share." (*Id.* at § 9.3.) The Association provided

6  Parcel Owners with cost estimates, which were then used in the calculation of the regular

7  assessments. (K. Beneteau Decl., ¶ 12.)

8      Regarding the special assessments charged to the parcel owners, each of the special

9  assessments was provided for in the both the 2017 CC&Rs and the 2019 CC&Rs. Pursuant to the

10  both the 2017 and 2019 CC&Rs Article 9, section 9.4.2.2, the "costs of bringing utilities or

11  infrastructure" may be levied against Parcel Owners. (2017 CC&Rs at pg. 45, Art. 9.4.2.2; 2019

12  CC&Rs at pg. 46, Art. 9.4.2.2.) Further, special assessments may also be levied for common area

13  expenses including "the upkeep, maintenance, management, operation, repair … of the Common

14  Areas," "management and administration of Declarant and/or the Association, including

15  compensation paid by Declarant and/or the Association to managers," "utilities, irrigation, gardening

16  and other services, if any, for the Common Areas," "fire, casualty, liability, workmen's

17  compensation, earthquake, flood, terrorism, such other insurance," "taxes paid by Declarant and/or

18  the Association in connection with the Common Areas," "the reasonably allocated cost of extending

19  security, police and bus services to the Project," "costs of initial construction of the perimeter wall

20  surrounding the Project, cultivation water, chilled and hot water and entrance gates to the Project,"

21  and "other expenses of every kind and nature reasonably incurred by Declarant and/or the

22  Association for any reason whatsoever in connection with the Common Areas or the full and proper

23  discharge of Declarant's and/or the Association's obligations." (2017 CC&Rs, at pg. 5-6, Art. 2;

24  2019 CC&Rs, at pg. 5-6, Art. 2.).

25      Therefore, each of the assessments levied on parcel owners was done so consistent with the

26  valid and enforceable CC&Rs.

27

28

1

## VI.   <u>CONCLUSION</u>

2          The Debtor has exhibited that the Plan complies with the requirements of 11 U.S.C.

3   sections 1191 and 1129(a) and based upon this requests that the Plan be confirmed, and for such

4   other and further relief as is necessary and appropriate.

5

6   Dated: March *16* , 2023                      Respectfully submitted,

7                                                 REID & HELLYER, APC

8                                                 By:_____
                                                  Douglas A. Plazak, Attorney for Debtor
9                                                 and Debtor In Possession, Indian Canyon
                                                  & 18th Property Owners
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DECLARATION OF KATHERINE BENETEAU

I, Katherine Beneteau, declare:

1.     I make this declaration in support of Debtor Indian Canyon Property Owner's Association Motion to Confirm Bankruptcy Plan. I have personal knowledge of the facts set forth in this declaration, and if called upon to testify I could and would testify competently thereto. I am an officer of Indian Canyon & 18th Property Owners Association ("POA"). I have worked for the POA in this capacity for the relevant time periods mentioned herein.

2.     The 2017 CC&Rs were then recorded with the Riverside County recorder's office on December 27, 2018. A true and correct copy of the 2017 CC&Rs is attached hereto as **Exhibit A**.

3.     On February 26, 2019, in advance of the March 6, 2019 POA meeting, I sent the members of the POA redlined CC&Rs, which included all proposed changes. A true and correct copy of the email to the POA stating I was sending them the amended CC&Rs is attached hereto as **Exhibit B**.

4.     I sent these proposed revisions to solicit any feedback on the changes.

5.     On March 6, 2019, the POA held a meeting for the members at which the proposed changes to the CC&Rs were discussed. At that meeting, a motion was made to postpone the vote on the proposed changes until March 25, 2019. A true and correct copy of the meeting minutes for the March 6, 2019 meeting are attached hereto as **Exhibit C**.

6.     Subsequently, the vote on the amendments was postponed numerous times, giving POA members ample opportunity to review and discuss the proposed amendments at POA meetings on March 25, 2019, April 29, 2019, June 12, 2019 and July 7, 2019. A copy of the meeting minutes for the meetings held on March 25, 2019, April 29, 2019, June 12, 2019 and July 7, 2019 are attached hereto as **Exhibits D, E, F and G** respectively.

7.     The clean version of the proposed amended and restated CC&Rs was sent to all members on May 15, 2019, 54 days prior to the vote on approval of the amended and restated CC&Rs. A true and correct copy of the email sending members the newer version of the proposed amended and restated CC&Rs is attached hereto as **Exhibit H**. A true and correct copy of the

1    proposed amended and restated CC&Rs sent to members on May 15, 2019 is attached hereto as

2    **Exhibit I**.

3        8.    At the meeting on July 7, 2019 the changes to the amended and revised CC&Rs

4    were discussed. The changes reflect the various compromises which were made in response to

5    individual lot owners' comments and suggestions. In particular, the final approved amendments to

6    the CC&Rs reflect edits as a result of discussions with Barry Ross (counsel for the owners of lots

7    13 and 27) and Lori Bessler (counsel for the owners of lot 2).

8        9.    On July 8, 2019, the amendments to the CC&Rs were voted on, which was recorded

9    in the meeting minutes. A true and correct copy of the July 8, 2019 meeting minutes are attached

10   hereto as **Exhibit J**.

11       10.   The 2017 CC&Rs were properly amended in July 2019 and the amended and

12   restated CC&Rs were made effective as of July 8, 2019. A true and correct copy of the 2019

13   CC&Rs are attached hereto as **Exhibit K**.

14       11.   At all times from the formation of the POA until the present, Coachillin Holdings

15   held over 51% of the voting shares for the POA.

16       12.   Special assessments charged to the owners was discussed at various meetings of the

17   Association and were only levied against parcel owners if such assessment had the requisite

18   approval from the members who compromised 51% of the voting shares. For example, on October

19   10, 2018 the costs for off-site and on-site water was discussed with POA members. A true and

20   correct copy of the meeting minutes from October 26, 2018 are attached hereto as **Exhibit L**.

21       13.   The Association provided Parcel Owners with cost estimates, which were then used

22   in the calculation of the regular assessments.

23       I declare under penalty of perjury under the laws of the State of California that the

24   foregoing is true and correct.

25       Executed this _16_ day of March, 2023 at _Rancho Mirage_, California.

26                                              _Katherine Beneteau_

27                                              Katherine Beneteau

28

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

3685 Main Street, Suite 300, Riverside, CA 92501
Mailing:  P.O. Box 1300, Riverside, CA 92502-1300

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S MOTION FOR ENTRY OF AN ORDER CONFIRMING DEBTOR'S PLAN OF REORGANIZATION UNDER CHAPTER 11; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATIONS IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 03/14/23, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Christopher Celentino**    christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **Arturo Cisneros**    arturo@mclaw.org, CACD_ECF@mclaw.org
- **Arturo Cisneros (TR)**    amctrustee@mclaw.org, acisneros@iq7technology.com;ecf.alert+Cisneros@titlexi.com
- **Kristopher Davis**    kristopher.davis@faegredrinker.com, shanta.teekah@faegredrinker.com
- **Jenny L Doling**    jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com
- **Abram Feuerstein**    abram.s.feuerstein@usdoj.gov
- **Everett L Green**    everett.l.green@usdoj.gov
- **Garrick A Hollander**    ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Joseph Leventhal**    joseph.leventhal@dinsmore.com, nicolette.murphy@dinsmore.com;meredith.montrose@dinsmore.com
- **Lisamarie McDermott**    lisamariem@jbulaw.net, stephanieg@jbulaw.net
- **Aram Ordubegian**    ordubegian.aram@arentfox.com
- **Douglas A Plazak**    dplazak@rhlaw.com
- **Cameron C Ridley**    Cameron.Ridley@usdoj.gov
- **Summer M Shaw**    ss@shaw.law, shawsr70161@notify.bestcase.com;shawsr91811@notify.bestcase.com
- **United States Trustee (RS)**    ustpregion16.rs.ecf@usdoj.gov
- **Christopher K.S. Wong**    christopher.wong@afslaw.com, yvonne.li@arentfox.com
- **J S Zundel**    SZUNDELLAW@ME.COM

☐ Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**2. SERVED BY UNITED STATES MAIL**:

On (*date*) 03/16/2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Scott H. Yun, United States Bankruptcy Judge, 3420 Twelfth Street, Riverside, CA 92501

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 03/16/2023 | Wendy M. Patrick | /s/ Wendy M. Patrick |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                              **F 9013-3.1.PROOF.SERVICE**

**COURT MAILING MATRIX
DUPLICATES AND ECF NOT
INCLUDED**

Christopher K.S. Wong
ArentFox Schiff LLP
555 West 4th Street, 48th Floor
Los Angeles, CA 90013-1065

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

VHRSS Solutions
 P.O. Box 580337
North PalmSprings, CA 92258-0337

Wood Smith Henning & Berman
LLP
Attn: Keith Smith
21804 Cactus Ave. #200
March Air Reserve Base, CA 92518

Hakala Law Group, P.C.
Attn: B. Hakala; R. Ostrowski
One World Trade Center, Suite 1870
Long Beach, CA 90831-1870

Richard J. McNeil
Crowell& Moring, LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614-2591

CGC Mroz Accounts & Advisors
73-733 Fred Waring Dr.#105
Palm Desert, CA 92260-2590

En Primeur
108 San Jose Avenue #2
San Francisco, CA 94110-3166

William Moreland
1655 E. Layton Drive
Inglewood, CO 80113-7000

SERVICE LIST:

Parcel Owners:

Coachillin Holdings, LLC
71713 Highway 111, Suite 100
Rancho Mirage, CA 92270

Solara
121 N. Post Oak Lane
#2801
Houston, TX 77024

LSPI Exchange Corp. As AT
for Ucan, LLC
9874 Orange Lane
Escondido, CA 92029

Kathy Li
39189 Twin Creek Drive
Temecula, CA 92591

Spartan Power, LLC
6710 Tamarisk Dr.
La Verne, CA 91750

Happy Hours, LLC
3200 Danville Blvd.
Suite 100
Alamo, CA 94507

VBHS Investments, LLC
3505 Cadillac Avenue
Building A
Costa Mesa, CA 92626

Moon Lev Investments, LLC
16168 Beach Blvd.
Suite 151
Huntington Beach, CA 92647-3880

SERVICE LIST - Continued

Parcel Owners:

En Primeur, LLC
44489 Town Center Way
Suite D #357
Palm Desert, CA 92260

Brightside Estate Holdings, LLC
44489 Town Center Way
Suite D #357
Palm Desert, CA 92260

Grapefruit Boulevard Investments, LLC
10866 Wilshire Blvd.
Suite 225
Los Angeles, CA 90024

CCC Holdings, LLC
274 Cecilia Way
Tiberon, CA 94920

Coachillin Energy Company, LLC
71713 Highway 111
Suite 100
Rancho Mirage, CA 92270

DHS Verde, Inc.
Represented by counsel – On Court's ECF list